# MERRIMACK,

## DECEMBER TERM, A. D. 1840.

### Tappan vs. Evans & a.

While a creditor has the body of his debtor in execution, his right to proceed against his property, by virtue of the judgment, is suspended ; and he cannot therefore file a bill in chancery, founded upon the judgment, to reach the debtor's equitable estate.

But he may, notwithstanding, proceed to foreclose any mortgage he may hold for the security of the debt, and to remove any fraudulent incumbrances upon the mortgaged property.

When matter, in bar of the relief sought, is apparent on the face of the bill, the defendant may demur. If the matter of defence is not apparent upon the bill itself, the defendant, if he means to take advantage of it, ought to show it either by plea or answer. If he does none of these, but answers fully to the merits, he may be held to have waived any matter of objection which he might have pleaded.

Where the ground of equitable jurisdiction is the discovery of facts solely within the knowledge of the defendant, it is sufficient, to sustain the jurisdiction, that a discovery is had of facts which are material to the case.

This court has jurisdiction in equity, independent of any alleged necessity for discovery, in all cases of fraud, where complete and adequate relief cannot be had at law ; and no remedy is adequate and sufficient against a fraudulent conveyance, except one which gives a release, or removes the fraudulent title.

In cases where a debtor fraudulently withdraws his property from execution, a bill in equity may be sustained, to reach his choses in action, in behalf of a creditor who has exhausted his remedy at law by a judgment, and execution returned that no property is to be found.

Where property is subject to execution, and a creditor seeks to have a fraudulent conveyance, or obstruction to a levy or sale, removed, he may file a bill in equity as soon as he has obtained a specific lien upon the property, whether the lien be obtained by attachment, judgment, or the issuing of an execution. If the property is not subject to levy or sale, or if the creditor has obtained no lien, he must show his remedy at law exhausted by an actual return upon his execution, that no goods or estate can be found, before he can file a bill to reach the equitable property, or choses in action, of his debtor.

An objection that the plaintiff shows no lien, and no judgment existing upon
which he has proceeded, or can proceed, against the property of the debtor,
may be taken at the hearing.

The fact that a mortgagee has instituted an action at law for the recovery of the
premises, which is pending, is no bar to a bill in equity, filed against the same
defendant, alleging that he claims under a fraudulent title.

Where a matter of fact is contested upon a bill in equity, the court may direct an
issue to be tried by the jury.

In Equity. The bill alleges that on the 19th of August,
1827, John E. Kelley, jr., David Heath, and John E. Kelley,
sen'r, executed a promissory note, by which they jointly
and severally, promised Benjamin F. Rogers & Co., or order,
$765, in two years, with interest, which note Rogers & Co.
indorsed to the plaintiff—that on the 21st of August, 1829,
Heath, for the purpose of securing the payment of the note
in part, executed to the plaintiff a mortgage deed of two tracts
of land in Warner, which was duly recorded on the 27th
of the same August—that Kelley, junior, and senior, at the
time of executing the note were, and ever since have been, re-
puted to be destitute of property, and that the plaintiff had re-
lied upon the mortgage deed, and said Heath, and his other
property, for the payment of the note—that Heath, who is
one of the defendants, and Evans, the other defendant, well
knowing that Heath had agreed to execute said mortgage,
and that it was to be executed on the 25th of August, and
was in fact executed in the fore part of that day, caused and
procured said tracts of land to be attached in the afternoon of
that day, at fifteen minutes past five o'clock, P. M., on a cer-
tain false and feigned suit at law, in favor of Evans against
Heath, made returnable February term, 1830, founded on a
promissory note for which no consideration had been paid,
which action, by the agreement of the parties to it, was en-
tered at said term and judgment rendered in favor of Evans,
for $321·28 debt, and $7·22 costs of suit; and that Evans
took out execution on that judgment, and on the 26th of
the same February levied it on the said tracts of land describ-
ed in the mortgage.

Tappan *v*. Evans.

The bill further alleged, that Heath, before the plaintiff's note became due, to wit., Nov. 7, 1829, with the advice of Evans, sold all his personal property not exempted from attachment, amounting to about $190, in order to put it beyond the reach of the process of law, and that a large proportion of it was purchased by Evans—that with the same fraudulent intent, on the 16th of the same November, Heath conveyed to Evans his homestead farm, situated in Warner, for the pretended consideration of $1200—that on the 22d of December, 1829, the plaintiff sued out a writ against Heath, on his note, and caused him to be arrested, whereupon Evans became bail for him—that the plaintiff recovered judgment for $625·98 debt, and $8·88 costs, and committed Heath to goal, in Hopkinton, and that Evans became, and still remains bail for him, for the liberties of the gaol, which were coextensive with the limits of the town of Hopkinton—that Heath, in the month of August, 1830, made a contract with one Leonard Noyes, for a farm in Hopkinton, within the limits of the gaol yard, for about $900—and that although Evans was then indebted to Heath by note, in the sum of $936·91, yet Heath caused the deed of the farm to be given to Evans, who executed his notes for all, or nearly all, the consideration, and Heath went into possession, and has occupied it ever since.

The bill further alleged, that the plaintiff brought a suit against Evans, September 18th, 1830, to recover the tracts of land described in the mortgage to him, who set up, in defence of the suit, a title in himself, under the levy of his execution—that such proceedings were had, that at September term, 1832, a verdict was found for the plaintiff, and judgment rendered for him, and that Evans had brought a writ of review in that action, which is now pending—that the plaintiff, Oct. 8, 1830, sued out a writ against Heath, on his judgment recovered on the note, and summoned Evans as his trustee, and such proceedings were had that at the Sep-

tember term, 1836, Evans was discharged, and the action is still pending, &c.

The bill prayed that the defendants might be decreed to pay the plaintiff the amount of his judgment against Heath, with interest, and all costs and expenses—with a further prayer for such other relief as should be consonant to equity, &c.

Heath in his answer admitted the execution of the note and mortgage, and that the Kelleys had been insolvent since March, 1828; and stated that he never gave Evans, before, or on the day on which the land was attached, any information, hint, or intimation, that he had mortgaged, or was about to mortgage the land to the plaintiff, and had no reason to think, and did not believe, that Evans in any way unstood, before he caused the land to be attached, that he had executed, or was about to execute, the mortgage.

He admitted, that on or about November 7, 1829, he sold and disposed of part of his personal property, to the amount of about $190, and that Evans purchased, at the sale, to the amount of $44·27, and gave his note payable in six months, but he averred that he never consulted Evans in relation to the sale, nor did Evans advise to it; his sole motive being to raise money to pay small debts.

He stated that being indebted to a considerable amount, he applied to several persons to purchase his farm, and among others to Evans, and finally sold to him November 16, 1829, *bona fide*, for $1200, for which Evans gave up three notes he held against him, secured by a mortgage of the farm, amounting to $549·76, became responsible for $215·25, due on another mortgage, and gave him two notes, one for $200, the other for $234·99. He stated the consideration of said three notes, two of which were for money lent, the other, of $300, was to indemnify Evans and one Elisha Morrill for signing a note to the Claremont Bank, in which Evans and Elisha Morrill were his sureties, April 16,

1828, for $300—that the note to the Claremont Bank was paid by the plaintiff, from the avails of the property of J. E. Kelley, Jr., collected by the plaintiff for his benefit, and the note given up to him, August 25, 1829—that his note, of $300, to Evans, being secured by mortgage, and he expecting to want more money, it was agreed that Evans should retain that note, and give him his for the same sum, to be held until he should want money and Evans could raise it for him.

He stated, further, that on said 16th of November, 1829, Evans held a note against him for $288, on which the attachment was founded, given for money which Evans and Joseph B. Hoyt had become liable for, and assumed to pay, to certain heirs, or in consequence of having been sureties for him, as their guardian ; and that Evans retained this note, when he gave him the notes of $200, and $234·99, the reason of which, as he understood, was, that Hoyt had an interest in it, and that it was then in suit—that July 9, 1830, he made a general settlement with Evans, and gave up to him the notes of $300, $200, $234·99, and $44·27, which he held against him, and that for these and other unsettled demands Evans gave him a note for $943, on which there was due at the time of filing the answer about $317.

He denied that he ever contracted, or attempted to contract, with Noyes, for the purchase of the farm, or paid, or agreed to pay, any part of the consideration ; but stated that Evans having purchased it, he hired it of him, for the yearly rent of $60, and has ever since continued in possession.

The answer of Evans was substantially like that of Heath, so far as it is material to this case.

A general replication being filed, evidence was taken on both sides.

*Bartlett, Leland, & Tappan,* for the plaintiff, argued—1. That Evans had knowledge of Heath's mortgage to the plain-

tiff, or had reasonable cause to know that it was executed, and that his attachment was therefore fraudulent and void— That this point was sustained by the answer.   1 *Johns. Ch. Rep.* 103; 3 *Bar. & Har. Dig.* 2, 9, 10, 176, 387; *Cooper's Pl.* 913; *Fonb. Eq.,* B. 2, *ch.* 6, § 3; 1 *Johns. Ch. R.* 267; 4 *Ditto* 46; 1 *Paige's R.* 467; 2 *Mason's R.* 531; 1 *Story's Eq.* 386; 1 *Condensed Chancery R.* 550; 1 *Hovenden on Frauds* 119; 4 *Ves. Jr.*, 619; 8 *Ditto* 88; 2 *Ves. & Bea.* 258.

2. That Evans fraudulently combined with Heath to place his property beyond the reach of the process of law, in order to defeat his creditors, particularly the plaintiff; and that this was a fraud against which equity should give relief. *Cooper's Pl.* 283, 313; 9 *Cond. Ch. R.* 463; *Fonb. Eq. R.,* B. 6, *ch.* 3, § 1; 3 *Bar. & Har. Dig.* 9, 577; 1 *Story's Eq.* 343; 2 *Johns. Ch. R.* 46; 4 *Johns. R.* 593; 2 *Hovenden on Frauds* 97; *Fonb. Eq.* B. 1, *ch.* 4, § 12; 1 *Peters' C. C. R.* 460, 464; *Hammond's Eq. Dig.* 41, 42; *Burr. R.* 467, 827, 927, 2477; 2 *P. Wms.* 427; *Fonb.,* B. 2, *ch.* 6, § 2; 8 *Wheat. R.* 449; 1 *Paige* 284; 7 *Johns. Ch. R.* 68; 1 *Hovenden on Frauds* 21; 9 *Ves.* 282; 2 *Stark. Ev.* 44; 11 *East* 588; 1 *Gall. R.* 655; 1 *Stark. Ev.* 291, *note;* 2 *Paige R.* 482; *Cowp.* 434; 2 *Atk.* 477; 4 *Johns. R.* 536; 1 *Cranch* 310, 316; 17 *Mass. R.* 222; 3 *N. H. Rep.* 55; 8 *N. H. Rep.* 35, 44; *Desaussure* 30; 1 *Story's Eq.* 200; 2 *Ves. Jr.*, 155; 1 *Story's Eq.* 376; 1 *Maddock's Ch.* 256; 5 *Har. & Johns.* 435; 2 *Har. & Johns.* 292; 1 *Bar. & Har. Dig.* 561, 565; *Fonb. Eq.,* B. 1, *ch.* 2, § 8, *note;* 4 *Cond. Ch. R.* 262; 12 *Serg. & Rawle* 448; 3 *Desau.* 1.

3. That Evans had under his control the property of Heath, which ought to be applied to the discharge of the plaintiff's claim.

*Jos. Bell, Farley, & J. Harris,* for the defendants, in addition to an argument upon the merits, as disclosed by the evidence, contended—1. That whatever conclusion might

be drawn from the evidence taken in the case, the plaintiff cannot recover on this bill, because this is a bill for discovery and relief. The subject matters of controversy between the parties are a collection of a promissory note, and the foreclosure of a mortgage given to secure said note. These are matters clearly cognizable in courts of law, and the plaintiff has purposely resorted there for his remedy. But a court of chancery may act in aid of a court of law, by way of compelling a discovery, in certain cases. This rule is, however, accompanied by another—that if the discovery sought for is not obtained by the answer, the bill must be dismissed.

The discovery sought, in this case, from the defendant, Evans, is, that he knew of the mortgage when he made the attachment, and that he had the property of Heath in his hands, to keep it from Heath's creditors. Now both these matters having been positively and fully met and denied by the answers, and the subject matters of the bill for relief being matters cognizable properly in courts of law, the bill must be dismissed, and the parties left to their legal remedies. The authorities for this will be found stated and cited in 1 *Story's Eq.* 82, *et seq. ;* 2 *Story's Eq.* 2, 690, 691 ; 7 *Cranch's R.* 69, *Russell* vs. *Clark ; Fonblanque's Eq.*, *B.* 6, *ch.* 3, *p.* 711, *note ;* 719, *note a.*

2. That Heath, having been committed to prison on a *ca. sa.* founded on the note in question, and still remaining in prison, no aid whatever can be given, by a court of equity, against Heath's property, in his own hands, or those of any other person, on the same judgment. 1 *Ambler's Rep.* 79, *Horn* vs. *Horn ; Hobart's Rep.* 52, *Foster* vs. *Jackson ;* 4 *Johns. Ch. Rep.* 454, *Bayard* vs. *Hoffman ;* 1 *Cowen's R.* 56, *Bigalow* vs. *Cooper ;* 11 *Mass. R.* 320, *Lyman* vs. *Lyman ;* 5 *Dane's Abr. Ch.* 136, *a* 17 ; 3 *Black. Com.* 414 ; 1 *Maddock Ch.* 470 ; 2 *Gwil. Bac., Tit. Executor, D.*

3. That the plaintiff is not entitled, on his mortgage, either to discovery or relief, as against Evans, under the circumstances, because he has already gone on to a trial at law, and a

verdict has been rendered against him on his mortgage title. 3 *Johns. Ch. R.* 355, *Dinsmore* vs. *Lyon;* 1 *Vernon's R.* 176, *Barbone* vs. *Brent; Fonb. Eq.* 719, *note;* 2 *Story's Eq.* 180, 895, *and cases cited.*

*Leland*, in reply. This is not strictly a bill of discovery, but a bill for general relief also ; and if the discovery is not fully obtained by the answers, the court having obtained jurisdiction, will give relief under the general prayer for relief. 1 *Story's Eq.* 88, 82, *note* 2 ; *Fonb. Eq.*, B. 1, *ch.* 1, § 3, *note f; Cooper's Pl.* xxxi. ; 2 *Atk. R.* 3.

It is said, as it appears from the bill that Heath was committed on the execution, and is still within the limits, that is a bar to relief. But this objection comes too late. If the objection is apparent from the bill, it should be raised by demurrer. *Story's Eq. Pl.* 609, 351, 381 ; *Cooper's Pl.* 110.

The commitment of Heath, if he remained in confinement, only suspends the operation of the execution. It is no payment of, or discharge of, the debt. 14 *Mass. R.* 155 ; *Ditto* 237 ; 5 *N. H. Rep.* 297 ; 2 *N. H. Rep.* 448. *See also,* 1 *Hovenden on Frauds* 85, 131 ; 6 *N. H. Rep.* 263 ; 2 *Black. Com.* 480, *note;* 3 *Black. Com.* 415, *note; Bac. Abr., Exr. D. ;* 3 *East* 255 ; 10 *Cond. Ch. Rep.* 398 ; 2 *Doug. R.* 417 ; 2 *Madd. Ch.* 281 ; 1 *Schoales & Lefroy,* 176 ; 2 *Atk.* 343 ; 1 *Ves., Jr.,* 431 ; *Cooper's Pl.* 149 ; 1 *Harr. Ch.* 283 ; 1 *P. Wms.* 445.

This bill is not between the same parties to the execution at law, nor for the same matters. *Cooper's Pl.* 269 ; 1 *Stark. Ev.* 190, 198.

The charge in the bill is fraud against the defendants. If made to appear, no former recovery in a suit at law, even for the same cause of action, is a good plea in equity. *Cooper's Pl.* 267 ; *Story's Eq. Pl.* 605.

The pendency of a suit at law, or a judgment at law, cannot be pleaded to a bill in equity for the same matter, and between the same parties, because the plaintiff has a right to the

oath of the defendant, and because the remedy and ground of relief are not the same in both courts. *Cooper's Pl.* 276; 2 *Madd. Ch.* 250; *Story's Pl.* 574. See farther on these points, 2 *Mason* 252, *Bean* vs. *Smith; Tidd's Pr.* 958; 5 *East* 147; 1 *Wash. C. C. R.* 320, *cited* 1 *Barb. & Har. Dig.* 677; 2 *Johns. Ch. R.* 296; 1 *Paige's R.* 305; 1 *Paine's R.* 525; 4 *Johns. Ch. R.* 677; 2 *Barb. & Har. Dig.* 41, 42; 2 *Hovenden* 75; 2 *Stewart's R.* 378; 2 *Paige* 567; 1 *Story's Eq.* 376; 1 *Johns. R.* 290; 1 *Pick. R.* 65, 70; *Chitty on Bills* 346, (*Ed.* 1830;) 2 *Paige* 333.

The bill charges that Heath and Evans combined to defraud the plaintiff, &c., by selling all the property, both personal and real, belonging to Heath, and placing the avails of the same beyond the reach of legal process. The answer admits that all was sold, and the avails put into notes, but denies all fraud. This, then, is an admission that the avails of the sale were placed beyond the reach of legal process.

The bill states a judgment recovered, which is also admitted by the answer. There is a general traverse to the answers.

As the answers stand, there is a waiver of any exceptions as to the commitment of Heath; but it is suggested by the court, that there has been no return of *nulla bona* on the execution, which is indispensable to lay the foundation for a court of chancery to reach the property of Heath, in the hands of Evans. Such a return, according to our laws and forms of execution, is not necessary, nor can it be done by the officer agreeable to the truth of his precept.

Our executions contain but one form, which comprehends all the various forms in England and New-York—the *ca. sa., fi. fa.* and *lev. fa.* 4 *Mass.* 402; 11 *Ditto* 317; 14 *Ditto* 473; and the officer is bound to execute this precept in either of the ways, and cannot make a true return unless he returns that he executed it upon the property or body. A *nulla bona* alone would be a bad return.

In England and New-York a judgment creates a *lien*

on real estate, and a judgment and execution, with a return of *nulla bona,* creates a *lien* on the assets. This is the reason assigned why a return of *nulla bona* is necessary ; but in this state no such *lien* is created till a levy ; therefore when the reason of the law ceases, the necessity of such return ceases.

It seems to be well settled in this country now, whatever may have been the fluctuating opinions in England since our revolution, that if a court of equity can reach the assets, it can choses in action, and equitable funds in the hands of third persons. This bill is framed to reach the equitable funds, or choses in action, in the hands of Evans, which are beyond the reach of any execution, and beyond the reach of our trustee process, being negotiable paper. 20 *Johns. R.* 554; 2 *McCord* 410, *cited* 1 *Bar. & Har. Dig.* 348 ; 6 *Ham.* 232, *cited B. & H.* 354 ; 1 *Dana* 534, *cited B. & H. Dig.* 348 ; 2 *J. J. Marshall* 301.

If the court should incline to the opinion that a return of *nulla bona* is necessary to reach the assets, in the hands of a third person, we think they cannot say it is necessary to reach choses in action, and equitable funds, because no lien can be created by such a return on a chose in action, or on equitable funds. By our laws the whole estate of every person, (with very few exemptions,) is a fund for the payment of his debts, and is subjected to them by process of law, and not by any *lien* created by operation of laws without process executed.

PARKER, C. J. Upon all the case, except that part relating to the land mortgaged by the defendant Heath, to the plaintiff, and attached and levied on by the defendant Evans, the defendants contend that the plaintiff is not entitled to the relief sought, and cannot maintain his bill for any relief, because they say, that the plaintiff, having obtained a judgment on his demand against Heath, has caused him to be committed to prison on the execution, and still holds his body under that commitment.

Tappan *v.* Evans.

If this fact is so, and it seems not to be denied in the argument, it would, if properly presented before the court, furnish a good bar to any proceeding upon the judgment, against the property of Heath, either at law or in equity.

It is expressly settled, in *Stillwell* vs. *Van Epps*, 1 *Paige's Ch. Rep.* 615, that " while the plaintiff has the body of the defendant in execution, on a *ca. sa.*, his right to proceed against the property of the latter is suspended. He cannot, therefore, so long as the defendant is in custody, file a bill in chancery to reach his equitable estate." And it has been held in England, that where a creditor has the body of his debtor in execution, he cannot be a petitioning creditor for a commission of bankruptcy. 1 *Strange* 653, *Burnaby's case;* 8 *D. & E.* 123, *Cohen* vs. *Cunningham.* And in New-York, that the judgment cannot be set off against a judgment in favor of the debtor. 1 *Cowen's R.* 56, *Cooper* vs. *Bigalow.*

In the case *Bean* vs. *Smith*, 2 *Mason's R.* 252, cited by the plaintiff's counsel, the debtor had been discharged from his imprisonment, on taking the poor debtor's oath, after which proceedings against his property were regular.

The rule, however, does not prevent the creditor from foreclosing any mortgage he may hold for the security of the debt; as in that case he proceeds not by virtue of, or on the foundation of, his judgment, but upon his deed; and he has the right to both remedies at the same time. It is not denied, in this case, that the plaintiff may pursue any regular remedies upon the mortgage title.

But a question arises here, whether the fact, that the body of the defendant Heath is in execution, is regularly before us, so that we can make it the foundation of a denial of any relief to which the plaintiff would be otherwise entitled.

The matter is properly in bar of the relief sought by the bill, and might form the subject of a demurrer, if it was fully set forth and apparent on the face of the bill, and there was no farther matter to control it. *Story's Eq. Pl.* 346.

It has been suggested that this matter is apparent upon the face of the bill, and that the court will therefore take notice of it. But this ground of defence is one which the party may waive. The commitment of the body is not a satisfaction of the debt, but only a suspension of further remedy upon the judgment; and, at law, it would not be a bar to an action of debt on the judgment, unless brought before the court by a plea, or brief statement. It is a good plea in bar. *Cro. Jac.* 595, *Dyer* vs. *Fincham.*

It may, however, well admit of some doubt, whether upon the whole matters alleged in the bill, bearing upon this point, a demurrer could be sustained here, merely because Heath had been committed. It is fully alleged, in the bill, that he was committed. It is not directly averred that he still remains a prisoner, although this may, perhaps, be inferred from the allegations that Evans became and still remains bail for Heath for the liberties of the jail; and that Evans purchased a farm within the limits of the jail yard, and Heath immediately went into possession of the same, and has lived on, and occupied it, ever since. But the bill states further, that an action has been commenced at law upon the judgment, on which Heath was committed, in which action Evans was summoned as trustee; that he was discharged in 1836; and that this action is still pending in court. Whether Heath put in any plea to this last action, or whether he was defaulted, does not appear on any of these pleadings; and if the fact be that his default was entered, so that the plaintiff is, *prima facie*, entitled to a new judgment, it is not clear that he would not be entitled, upon the rendition of such judgment, to an execution against the property of Heath; and, upon that ground, to resort to the same remedies against his property, if there were no other objections, as if Heath had never been committed.

Where the objection is not apparent upon the face of the bill itself, if the defendant means to take advantage of it, he ought to show the matter which creates the objection, either

Tappan *v*. Evans.

by plea, or answer. *Story's Eq. Pl.* 492. And the matter of this objection, if well founded, and not obviated by the proceedings in the second suit, would seem to furnish the foundation of what is called a pure plea. *Story's Eq. Pl.* 504.

It seems, also, that the defendants might have insisted upon the commitment, as a bar to this part of the bill, in their answer, without pleading it in form, if the second suit has not obviated the objection. *Story's Eq. Pl.* 647, 8. It is not necessary to pass upon these subjects at this time.

The defendants have not demurred, nor put in a plea, nor have they in their answer stated and insisted upon the fact, that the defendant Heath has been committed, and is still held in custody, as a bar to the relief sought. They have undertaken to answer fully to the merits of the bill, without regard to this point, and have thereby waived the objection. If the defendant answers to any thing to which he may plead, he overrules his plea, for the plea is only why he should not answer ; and if he answers, he waives the objection, and of course his plea. *Story's Eq. Pl.* 532. In *Stillwell* vs. *Van Epps*, before cited, the objection was taken by plea. And as the debt is not extinguished, or satisfied, by taking the body in execution, the remedy against the property being thereby merely suspended, there seems to be no valid objection to the doctrine, that the party may waive that ground of defence, and shall be held to waive it if he answer without relying upon it.

Another exception taken by the defendants, is, that the discovery sought from the defendant Evans, has been met and denied by the answers, and that the bill must therefore be dismissed. Where the jurisdiction depends upon discovery, if the answer denies the matters of fact, of which discovery is sought by the bill, the latter must be dismissed, for the jurisdiction substantially fails. 1 *Story's Eq.* 91.

It is true, as alleged by the defendants' counsel, that the answers deny in terms any knowledge of the plaintiff's mortgage, by Evans, when he made his attachment, and deny also

that he has the property of Heath in his hands, to keep it from Heath's creditors. But this is by no means a denial of all discovery in the case. The defendants have admitted divers matters charged in the bill ; have stated the time when the mortgage was executed ; the time when the attachment was made ; conveyances of property by Heath to Evans ; the consideration of those conveyances, &c. These are matters which are proper subjects of consideration, and material in the case ; and if they are of sufficient weight, and there was no other objection to the plaintiff's case, the court might set aside the conveyances upon these admissions, notwithstanding the denial of knowledge, and of fraud. 2 *Johns. Ch. R.* 283, 301, *Kendrick* vs. *Robinson.* In 7 *Cranch's R.* 69, *Russell* vs. *Clark's Exrs.*, the principle stated is that " where the only ground of equitable jurisdiction is the discovery of facts, solely within the knowledge of the defendant, and the defendant by his answer discloses no such facts, and the plaintiff supports his claim by evidence in his own possession, unaided by the confessions of the defendant, the plaintiff should be dismissed from the court of chancery, and permitted to assert his rights in a court of law." That does not appear to be this case ; and as the matter stands, therefore, the case is not within the rule on which the objection is founded.

It is said in Story's Equity, treating of cases where relief is sought upon bills of discovery, that in order " to maintain the jurisdiction for relief, it is necessary, in the first place, to allege in the bill that the facts are material to the plaintiff's case, and that the discovery of them is indispensable as proof ; for if the facts lie within the knowledge of witnesses, who may be called in a court of law, that furnishes a sufficient reason for a court of equity's refusing its aid. The bill must therefore allege, (and, if required, it must be established,) that the plaintiff is unable to prove such facts by other testimony." 1 *Story's Eq.* 91. But this is perhaps confined to bills for discovery in aid of a suit at law. The cases cited by Story,

so far as I have had the means of examining them, are of that character. 1 *Johns. C. R.* 543 ; 4 *Johns. C. R.* 409. If these allegations were necessary, the plaintiff's bill does not contain them in the direct and specific form which the rule seems to require ; but no exception has been taken on this ground. The bill alleges that the plaintiff has not an adequate remedy at law. This is believed to be the ordinary allegation in cases of fraud ; and in cases where this allegation is not sufficient, the exception ought to be regularly and specifically taken.

But this is not a case where the jurisdiction is founded on discovery merely. The general principle that complete and adequate relief cannot be had at law, in cases of fraudulent conveyances of real estate, has been recognized here. 8 *N. H. Rep.* 426, *Dodge* vs. *Griswold.* We have jurisdiction, therefore, in equity, by statute, independent of any alleged necessity for a discovery.

In this case, if the levy of the defendant Evans, or any conveyance to him, is fraudulent, and the plaintiff is entitled to a remedy against the fraud, no remedy is complete, except one which gives a release, or removes the fraudulent title.

But upon what ground is it, that the court can grant the special prayer for relief, and order the defendants, or either of them, to pay the debt and costs due from Heath to the plaintiff? There has been no suggestion of a desire for such a decree against Heath alone, nor of any ground upon which it could be predicated. The mere fact that he owes the debt, is no foundation for such a decree. The plaintiff had a legal remedy against him for its recovery, which he has pursued to a judgment. Nor does the fact, that he has fraudulently conveyed away his property, if that is proved, furnish the foundation for a decree ordering him to pay the debt and costs.

It has been contended, in somewhat general terms, that the plaintiff is entitled to this relief against Evans. It has been urged, that chancery will lend its aid to a creditor, to

pursue an equitable fund, for the satisfaction of his debt, provided he cannot obtain satisfaction at law ; and that it has power to assist a judgment creditor to discover and reach the property of a debtor, which is beyond the reach of an execution at law. This was formerly doubted, but later authorities seem fully to have established the principle. 20 *Johns. R.* 554, *Hadden* vs. *Spader ;* 4 *Johns. Ch. Rep.* 787, *Mc-Dermutt* vs. *Strong ;* 2 *Mason's R.* 252, *Bean* vs. *Smith.* In citing this latter case, however, it may be proper to remark, that it must be considered as an extreme case, and, aside from the general principle involved, it may be regarded as standing very much upon its own merits. The creditor having pursued his remedy against his debtor, according to the laws of the state, and having exhausted all the remedies that the state laws gave him, brought his bill in chancery in the circuit court of the United States, to be relieved against a fraudulent conveyance of real estate, against which the courts of Rhode Island, either at law or in equity, could not aid him ; and the relief was granted upon the ground that in such case the debt should be held to be a charge upon the land, in the hands of the fraudulent grantee.

In the present case, there is no equitable fund in the hands of Evans. A question is put in the bill, whether Evans did not give Heath a promissory note for $936·91, on or about the 9th of July, 1830 ; and the answers admit a note of that date for the sum of $943, on which there was due, at the coming in of the answers, about $317. This is not properly an equitable fund, but a chose in action. It may, however, be subject to the same rule. In *Hadden* vs. *Spader*, 20 *Johns.* 554, choses in action are put upon the same ground as equitable property. It is there said that it makes no difference whether the property of the debtor consists in choses in action, money, or stock, for the court can compel the debtor or his trustee to pay it over to the creditor, and can direct a transfer and sale of the stock, for the benefit of the creditors. *See, also,* 1 *Paige's R.* 309, *Beck* vs. *Burditt ;* 9

Tappan *v.* Evans.

*Cowen's R.* 722, *Weed* vs. *Pierce.* This appears to be sound in principle ; and notwithstanding the case, *Donovan* vs. *Finn,* 1 *Hopkins' Ch. R.* 59, we have no hesitation in adopting it ; but it cannot avail the plaintiff. It may be doubted whether his bill is so formed as to reach this promissory note. It alleges no such indebtedness as a ground of relief. Nor does it set up that Evans is a trustee. There is merely an interrogatory relating to it. Waiving, however, any further consideration of this question—If the bill had been brought to reach the money which was thus due from Evans, the plaintiff must fail, on this part of the case, for another reason.

The general principle, deducible from the authorities applicable to this case, is, that where property is subject to execution, and a creditor seeks to have a fraudulent conveyance or obstruction to a levy or sale removed, he may file a bill as soon as he has obtained a specific lien upon the property, whether the lien be obtained by attachment, judgment, or the issuing of an execution. But if the property is not subject to levy, or sale, or if the creditor has obtained no lien, he must show his remedy at law exhausted, by an actual return upon his execution that no goods or estate can be found, (which is pursuing his remedy at law to every available extent,) before he can file a bill to reach the equitable property of the debtor. 4 *Johns. Ch. R.* 687, *McDermutt* vs. *Strong ; Ditto* 682, *Williams* vs. *Brown ; Ditto* 676, *Brinckerhoff* vs. *Brown ;* 5 *Johns. Ch. R.* 280, *Spader* vs. *Davis & Hadden ;* 1 *Paige's C. R.* 305, *Beck* vs. *Burditt ;* 4 *Paige* 310, *Child* vs. *Brace ;* 8 *N. H. Rep.* 425, *Dodge* vs. *Griswold ;* 20 *Johns.* 554, *Hadden* vs. *Spader ;* 9 *Cowen's R.* 722, *Weed* vs. *Pierce ;* 9 *Wendell's R.* 548, 560, 561, 566, *McElwain* vs. *Willis.* The same principle seems to be recognized in North Carolina, and Kentucky. *See cases cited* 1 *Bar. & Har. Dig.* 348, 353.

It has been argued that the principle of these cases is not applicable here, because our writ of execution contains a com-

mand to the sheriff, in want of property on which to levy the execution, to take the body ; and that the creditor cannot, therefore, have such a return, if the body is to be found. But this argument cannot avail, because we recognize the right of the creditor to direct the officer not to commit the debtor. He may have a return of "no property," therefore, if the facts will warrant it, notwithstanding the *ca. sa.* clause of the execution.

1 do not understand that the principle, as stated in *Beck* vs. *Burditt,* is at all predicated upon the statutes of New-York, although it is there said, that such is the construction recently adopted by the legislature, in such cases. *See* 9 *Wendell* 560, 566. The principle, that where the party can obtain a lien, he may proceed as soon as his lien is perfected so as to give him an interest, and not before, and that when he cannot obtain a lien at law, he must exhaust the legal remedy, seems to present but a slight modification, or explanation, of the principle stated in some of the cases preceding *Beck* vs. *Burditt,* so as to permit the creditor to proceed against personal property which is subject to sale on execution, as soon as he has acquired a lien.

The filing of the bill, or doing some other decisive act showing an intention of pursuing the fund, is said to give the lien on the equitable property. 9 *Cowen's R.* 722.

But the plaintiff does not show that he has pursued his remedy at law, so as to entitle him to come into equity against the choses in action of Heath, or against any equitable property of his. He shows no execution, with a return thereon that no property can be found to satisfy it. He does not show any attempt to pursue the property of Heath by execution. On the contrary, he shows, by his bill, that he caused the body of Heath to be arrested and committed. There is no allegation that Heath has escaped, or taken the poor debtor's oath. If he is still in custody, which is not denied, the plaintiff can have no execution, on that judgment, on which to make a levy upon the property of Heath, or pro-

cure any such return.   3 *Black. Com.* 414 ;  *Cro. Jac.* 595 ;
*Hobart's R.* 59 ; 13 *Johns. R.* 535, *Jackson* vs. *Benedict ;*
1 *Paige's Ch. R.* 615, *Stillwell* vs. *Van Epps ;* 11 *Mass.
R.* 320, *Lyman* vs. *Lyman ;* 14 *Mass. R.* 447, *Little* vs.
*Newburyport Bank.*

It has been said, that the plaintiff has carried the process
of the law to every available extent.   If by this it is meant
that he has arrested Heath, and holds him in execution, so
that he cannot proceed against his estate, that is not carrying
the process of the law to every available extent, within the
meaning of the authorities.

So long as the debtor is thus held in custody, the execu-
tion has not been carried to every available extent, because
it still avails to hold him in custody.   If the principle were
applicable to such a case, the fact that the debtor was in cus-
tody would not be a good bar to a bill, which we have seen
it is if pleaded.    1 *Paige* 615, *and other authorities before
cited.*

It must be recollected that we are now considering, not
the defendants' exception in bar of the plaintiff's title to
relief, that if his title was otherwise well made out, he could
not recover, because he held the body of Heath in custody ;
but we are now enquiring whether the plaintiff has shown
a matter essential to his title to relief.   If he asks to have
equitable property, or choses in action, applied to the pay-
ment of his debt, he must show an execution, pursued against
the goods of his debtor, and returned " no property."   This
he has not shown, and he fails therefore of showing a mat-
ter essential to entitle himself to that species of relief.   It is
not equivalent, or sufficient, to show that he has taken the
debtor in execution, and holds him without being able there-
by to enforce payment ; for that is the very matter which,
if properly presented, instead of making out a case for relief,
would constitute a bar to the bill.

And for similar reasons the plaintiff cannot sustain any
title to relief, under the general prayer of the bill, against

any of the sales and purchases set forth in the bill, even if they were fraudulent.

There is an allegation in the bill that Heath sold the greater portion of his personal property, by advice of Evans, to put it beyond the reach of the process of law, and that Evans purchased part of it. The advice is denied, but the sale of part of Heath's personal estate is admitted, and that Evans purchased to the amount of $44·27, which was afterwards included in the large note of $943.

And it is alleged that Evans took a conveyance of Heath's homestead farm, for little or no consideration, to defraud and delay the plaintiff, thereby placing all his real estate beyond the process of law. The answers admit the conveyance, but allege that it was a purchase for an adequate consideration, and deny the fraud. Part of the consideration it is said was debts due to Evans, and for part he gave his notes, which were afterwards included in the large note before mentioned.

There is also a statement in the bill, that Heath made a contract with Noyes, for a farm in Hopkinton, within the limits of the gaol yard, and that although Evans was then indebted to Heath in more than $900, Heath caused the deed to be made to Evans, and he executed his note for the consideration, or nearly all the consideration of the purchase ; and that Heath went into possession, and has occupied it ever since. And the bill charges that Heath paid for the farm, and that the deed was taken by Evans fraudulently, and for the purpose of defeating the plaintiff in the collection of his demand. The answers deny that Heath contracted for the farm, or ever had any interest in the purchase, and allege that he has occupied as tenant, under an agreement to pay rent.

In relation to real estate fraudulently conveyed by a debtor, one mode of relief, in equity, is to remove the fraudulent title, either before or after a levy, so as to perfect the title acquired under the proceedings at law.

And where real estate has been purchased with the money

of a debtor, and a conveyance fraudulently taken in the name of a third person, to secure it from attachment, a creditor may levy upon it, and equity decree a release.

Perhaps in these cases the fraudulent grantee might be regarded as a trustee, and held to surrender the property, or account for its value. If the fraudulent grantee has conveyed to a *bona fide* purchaser without notice, and the avails are in the hands of the fraudulent grantee, he may be held as trustee, and required to account for the proceeds.

If, therefore, the plaintiff appeared to have any lien upon the real or personal estate of Heath, it might be necessary to enquire, as a matter of fact, whether the purchase of the goods, or of the farm, by Evans, was fraudulent as against the plaintiff, and whether the farm of Noyes was purchased with the money of Heath, and held by Evans as trustee. The plaintiff seems to contend for all these positions. The defendants deny them, and evidence has been taken on both sides.

But upon all these points the plaintiff's case must fail, for the reasons, and on the authorities, before stated. He not only does not show an execution returned unsatisfied, but he does not show any judgment which can operate as an equitable lien upon real estate, and on which he could now proceed against the estate of Heath, if there was no fraudulent conveyance in the way. Whether any judgment and execution, without an attachment or levy, and without a return upon the execution, can operate even as an equitable lien, in this state, may deserve consideration. A judgment and execution here constitute no lien at law. But if, waiving this question, and supposing that a judgment, without more, might constitute a lien in equity, upon the filing of a bill, it must be a judgment capable of being enforced against the property of the debtor. It must not be a judgment which is satisfied, or on which all right to proceed farther is suspended. And the plaintiff shows no such judgment. His bill states that he obtained a judgment, and that he issued

an execution ; but it goes farther, and sets forth that he caus-
ed the body of Heath to be committed on it.  If there were
nothing farther showing that he is still held in custody,
we could not infer that he is not.   We could not pre-
sume that he had escaped, or taken the poor debtor's oath ;
and the bill, therefore, if it does not show explicitly that the
plaintiff's remedy against property is barred, or suspended,
does not show affirmatively, as it should do, a judgment
which is in force, so that the plaintiff could proceed, if fraud-
ulent conveyances were out of the way.   On his second suit
he shows that he has not yet obtained a judgment.   If
Heath cannot now allege his commitment in bar of a judg-
ment in that suit, because he has omitted to plead it, still, no
judgment having been rendered, and no attachment having
been shown to have been made in that suit, there is no lien,
legal or equitable.

The case *Brinckerhoff* vs. *Brown,* before cited, shows
that this objection to the relief may be taken at the hearing.
It is, as before suggested, entirely distinct from the point,
taken by the defendants, that the body is still in custody ;
although it leads to the same result.   It proceeds not upon
the ground that the plaintiff shows he has his debtor in cus-
tody, and is therefore barred of relief, but that he does not
show a judgment in force, upon which he can proceed
against the property of Heath, nor any attachment, and for
that reason is not entitled to maintain his bill as a creditor.

It is not necessary, therefore, to enquire how far the evi-
dence tends to show these conveyances fraudulent or other-
wise.

The remaining matter for consideration, is that part of
the bill relating to the plaintiff's mortgage, and the attach-
ment, by the defendant Evans, of the land included in it, after
the mortgage was executed, and before it was recorded.
The parties are at issue upon the question whether Evans
had notice of the mortgage, when he made the attachment,
and whether the attachment and levy are therefore fraudulent
as against the plaintiff.

This mortgage stands independent of any judgment or execution. Its validity, or the plaintiff's right to proceed upon it, for the recovery of the land, is not affected by the question whether the plaintiff has obtained a judgment on his note. Nor is the fact that the plaintiff has Heath in execution any bar to this right.

It has been objected that the plaintiff has elected to proceed at law, in relation to this mortgage. But the principle does not seem to apply. The plaintiff elected to proceed at law, and obtained a judgment against Evans, who commenced, and is prosecuting, a review, for the purpose of defeating that judgment. The principle of the authorities cited is, that after a verdict at law, a party comes too late with a bill of discovery. 3 *Johns. C. R.* 355. To this rule, however, there are exceptions. 1 *Vernon, by Raithby,* 177, *note ;* 2 *Story's Eq.* 180. If Evans had obtained a verdict in the first action, and the plaintiff had then come into chancery to prevent him from entering a judgment on that, and thus to procure a re-hearing of what had been tried at law, the authorities cited by the defendant would seem to be more applicable. But as the case now stands, it is as if the plaintiff had obtained possession without suit, and Evans was seeking to oust him.

But the fact that an action at law is pending between the plaintiff and Evans, may have some bearing upon the disposition which ought to be made of this case, upon this point. The review is now pending in the C. C. Pleas, the further prosecution of it having been delayed by this case. If in truth the plaintiff has obtained, by his bill, no admission of facts, that he could not otherwise prove, bearing upon the question of notice, this part of the controversy may as well be tried at law as in equity ; and the relief which could there be granted, if not as complete as that administered in equity, might perhaps answer the purpose. The matter in controversy is a mere matter of fact, and one peculiarly proper for the consideration of a jury.

Tappan *v.* Evans.

Mr. Justice Story, in considering the jurisdiction of courts of equity, states three propositions—first, that in bills of discovery seeking relief, if any part of the relief sought be of an equitable nature, the court will retain the bill for complete relief; secondly, that in matters of account, fraud, mistake and accident, the jurisdiction for relief will generally, but not universally, be retained and favored; and thirdly, that in cases where the remedy at law is more appropriate than the remedy in equity, or the verdict of a jury is indispensable to the relief sought, the jurisdiction will be declined; or if retained, will be so subject to a trial at law. 1 *Story's Eq.* 90.

Perhaps a verdict is not indispensable in this case. This court might find the fact. But there is evidence on both sides to be weighed. Aside from the denials, in the answers, of the fact of notice, and the admissions of certain facts which may bear upon that question, there is evidence on both sides from witnesses. The case at law, turning upon this point, has been tried once or more by a jury, and there seems to be no propriety in withdrawing a question of this nature from the consideration of the jury, to have it determined by the court.

If there is discovery material to the plaintiff's case, it is not by direct admission of notice, but of other facts which may bear upon the matter in controversy.

In a controversy about matter of fact, the court of chancery, if it have jurisdiction, may direct an issue, to try the fact by a jury. The court directs an issue for the better information of its conscience. If fully satisfied as to the evidence, they will not send it to a trial at law. Issues are frequently directed, when matters of law are mixed with matters of fact. *Fonb., B.* 6, *ch.* 3, § 6 & 7. The awarding an issue rests in sound discretion. 6 *Johns. C. R.* 257, *Dale* vs. *Roosevelt;* 1 *Johns. Cas.* 436. Where the uncertainty as to the validity of a title arises from questions of fact, it is most proper they should be tried by a jury. 1 *Hopkins* 449, *Seymour* vs. *DeLancey.*

We are of opinion that this is a very proper matter to be so tried. If the plaintiff has obtained any discovery, which, taken in connection with the general denial, he deems material, the court will retain the bill and direct an issue.

But if no such discovery is in fact had, the bill may be dismissed, and the parties left to their remedy at law in the suit now pending.

We will give the plaintiff his election upon this point.

The following decree was entered :

The plaintiff in this case having elected to take an issue to be tried by the jury—It is thereupon ordered and decreed, that an issue be framed upon the question, whether said Evans, at the time he made an attachment of the lands included in the mortgage from said Heath to the plaintiff, as set forth in the plaintiff's bill, had notice that the mortgage had been executed by Heath to the plaintiff ; that the issue be sent to the court of common pleas for trial, to be tried by a jury ; and that the verdict thereon be certified to this court. And it is further ordered, that the parties upon the trial of the issue may use the bill and answer, and any evidence legally taken to be used on the hearing in chancery, and also such other and further evidence as may be legally offered upon the trial of said issue at law ; and that the plaintiff's bill be retained for further proceedings in the premises.