## STONE & a. v. ANDERSON & a.

A creditor, who has attached the property of his debtor, has a sufficient lien upon the same to entitle him to file a bill in equity to remove an incumbrance or obstruction to a levy or sale, placed upon the property by means of fraud.

The superior court have jurisdiction in equity in all cases of fraud, where complete and adequate relief cannot be had at law; and in case of a fraudulent conveyance, or of a fraudulent incumbrance upon property, the remedy, to be complete and adequate, must be such as to remove the fraudulent title or incumbrance.

Where the property of A., who was the *bona fide* debtor of B., was attached by C., upon a claim procured against A. by fraud, and the property was also mortgaged to D., to secure him for signing notes to C., embracing such fraudulent claim, and B. likewise attached the property—*Held*, that B. could maintain a bill in equity against A., C. and D., for relief.

The allegation of confederacy in a bill in equity is not essential, except where it is intended to charge fraud and combination specifically.

Under the general prayer for relief, the court may grant such relief as the case stated in the bill will justify, if it be not inconsistent with that specifically prayed for.

Whether under the general prayer the complainant is entitled to any relief consistent with the case made, though inconsistent with the specific relief prayed for, *quaere.*

IN EQUITY. The bill was filed by Stone & Page, and other firms, merchants in Boston, against Anderson & Sargent, partners, and also merchants doing business in Boston, and Samuel Morrison and William M. Morrison, of Bethlehem, in this county.

The bill charges that Samuel Morrison, whom we understand to be the father of one Joseph F. Morrison, a pedlar, residing at Plymouth, in September, 1849, gave three orders in favor of said Joseph F. to procure goods of the complainants—one of the orders being drawn upon Stone & Page, and the other two upon the other complainants.

The orders were in the following form :—

"Bethlehem, Sept. 1, 1849.

Messrs. Stone & Page—Gent.: Will you please let the bearer, Mr. J. F. Morrison, have what goods he may call for

at any time, and I will be accountable for the same in six months from the purchase.

SAMUEL MORRISON.

The bill then states that by means of these orders Samuel Morrison became and was indebted to the orators in the sum of $1519.28. That on the 17th of January, 1851, Stone & Page commenced a suit for the recovery of the amount due them, and attached all the interest which Samuel Morrison had in certain real estate in his possession, and also attached sundry articles of personal property, likewise in his possession—said real estate and personal property having been all previously, on the 6th of the same month, mortgaged to William M. Morrison, the other defendant, and also the son of Samuel Morrison, for purposes which will be hereafter stated. The other complainants also commenced suits for their demands, and attached the same property. These suits were commenced in Grafton county, and are all pending there at the present time.

The bill then proceeds to state that Joseph F. Morrison, in whose favor these orders had been drawn by Samuel Morrison was, on the fourth of the same January, indebted to Anderson & Sargent, the defendants, in a considerable sum, for goods sold and delivered to him upon his sole and individual credit—the amount due, the complainants are unable to state. That on that day Anderson & Sargent having ascertained that Joseph F. Morrison was irresponsible and unable to make payment of their demand, and having also ascertained that Samuel Morrison was responsible, and possessed of a considerable amount of real and personal estate in Bethlehem, and having likewise ascertained that Samuel had drawn orders in favor of Joseph F., upon which goods had been obtained in Boston, concerted a scheme to induce Samuel Morrison, by fraud and misrepresentation, to charge himself with the amount of their claim against Joseph F. Morrison.

And for that purpose Anderson, together with one S. P. Gilbert, who was at that time and still is the clerk and confidential agent of Anderson & Sargent, on the 4th of January, went to Plymouth, and in furtherance of said fraudulent design, Gilbert called on Joseph F. Morrison, and, as such agent of Anderson & Sargent, represented to him that it was rather dull times, and showed him some samples of goods, and said that they were looking up their customers a little, and that he hoped to get an order from him for goods to the amount of $1000; that they had an amount of money to make out, and wanted him to pay something on his old account. That thereupon Joseph F. Morrison paid Gilbert $200, to be applied on Anderson & Sargent's claim, and consented to make an order upon Anderson & Sargent for more goods.

That Gilbert then drew an order upon Anderson & Sargent for goods to the amount of $1000, or near that sum, and at the bottom of the order made a statement that the said Joseph F. Morrison was the person who had purchased goods of Anderson & Sargent for Samuel Morrison. That Gilbert, falsely pretending his purpose to be to sell goods to Joseph F. Morrison, and falsely representing to him that the purpose of the statement at the bottom of the order was to make him, the said Joseph F. Morrison, known to Anderson & Sargent, procured Joseph F. to sign the order with the statement, without his being made fully aware of its exact import and object. That Gilbert had no purpose to sell the goods to Morrison, or that Anderson & Sargent should answer the order; but the purpose was to obtain a statement from Joseph F. Morrison, to be used in furtherance of the fraudulent design upon Samuel Morrison.

The bill then alleges that Anderson and Gilbert, having obtained this statement from Joseph F. Morrison, went directly to Littleton, near the residence of Samuel Morrison. That Gilbert then informed Samuel that he had a demand against him in favor of Anderson & Sargent; to which

Samuel replied that he knew nothing about the firm of Anderson & Sargent, and had no dealings with them; that he had given orders to Stone & Page, and to the other complainants in this bill, and no others. That Gilbert then falsely and fraudulently represented to Samuel Morrison, for the purpose of inducing him to charge himself with this debt, that Stone & Page and Anderson & Sargent were connected together in business; that the order which he had drawn upon Stone & Page had come into the possession of Anderson & Sargent, and that they claimed to hold him upon the strength of it. That he had not the order there, but would send it to him immediately on his return to Boston, in case an arrangement should be made.

The bill then charges that in truth there was not then, and never had been, any connection in business between Anderson & Sargent and Stone & Page; that Anderson & Sargent had not at that time, nor at any time, the order itself, nor any interest whatever therein, but the same was in the possession of Stone & Page; and that Gilbert had no power over the order or intention that it should be delivered to Samuel Morrison.

The bill further sets forth that during this interview between Gilbert and Samuel Morrison, Gilbert presented to Morrison three notes, dated January 4th, 1851, payable to Anderson & Sargent, on demand with interest, amounting in the whole to $1558.24; that Gilbert requested Morrison to sign them, which he refused to do.; that Gilbert falsely and fraudulently represented to Samuel that the purchase of the goods sold and delivered by Anderson & Sargent to Joseph F. was in the name and on the credit of Samuel. That Gilbert then drew up a paper which he requested Samuel to sign; that Samuel at first declined to sign it; that thereupon Gilbert represented to Samuel that a writ was already made out against him upon the claim; that Anderson was then at Littleton, and was a stern, resolute man, and that unless he signed the writing, all his goods

and stock would be attached and taken away from him within two hours; that, on the contrary, if he would sign the writing, he and Anderson would return to Boston and nothing more should be done about it. That Gilbert also represented to Samuel that unless an arrangement was made, they should obtain a requisition from the governor and have Joseph F. tried by the laws of Massachusetts, which would subject him to imprisonment in the State prison. That under these circumstances, and influenced by these representations, Samuel Morrison signed the paper, and it was carried away by Gilbert. That the orators have no knowledge of the exact contents of the paper, but believe it to have been a request that Anderson & Sargent should let Joseph F. Morrison have no more goods on his account.

That in about an hour and a half after this transaction, Anderson and Gilbert came to Samuel Morrison, and Anderson then stated to Morrison that one of three things must and should be done; either that Samuel should give his notes for the claim of Anderson & Sargent, and mortgage his property to secure their payment; or that he should give his notes for the claim jointly and severally with his son William M. Morrison; or that all his property should be attached upon a writ founded upon said claim. That Anderson then drew four notes, all dated January 6th, 1851, for like sums, payable jointly and severally to Anderson & Sargent, or their order, in three, six, nine and twelve months, with interest, the whole amounting to $1571.49, (probably expenses were added to the debt,) and, in addition to what had already been said to Morrison, he further represented that in selling the goods he knew no person but Samuel Morrison, and that if he, Samuel, did not find everything just as he and Gilbert had represented, they would make it all right; and that they would immediately send him the order drawn upon Stone & Page.

That Samuel Morrison, in consideration of the representations, statements and promises thus made by Anderson

and Gilbert, in furtherance of their fraudulent design, exe-
cuted the four notes, and procured his son William M. to
sign the same with him as surety, and delivered the notes to
Anderson & Sargent, for their claim against Joseph F. Mor-
rison.

The bill then avers that the goods were sold to Joseph F.
Morrison upon his sole and individual credit, and not upon
the credit of Samuel, and that he was in no way liable to
pay for the same; that at the time of the sale, nor at any
time, was there any connection in business between Stone
& Page and Anderson & Sargent; that Anderson & Sar-
gent never had possession of, nor any interest in, the order
drawn upon Stone & Page; all of which facts Anderson
& Sargent and Gilbert well knew.

The bill then charges that Samuel Morrison was induced
to sign the four notes to Anderson & Sargent by the false
and fraudulent representations and promises of Anderson &
Sargent, and Gilbert as their agent, and that the notes were
given wholly without consideration on the part of Samuel.

The bill then sets forth that to secure William M. Morri-
son for signing as his surety the four notes, Samuel Morri-
son, on said 6th day of January, made and executed to
William M. Morrison mortgages of all his real estate and
personal property, which were duly recorded, being the same
property attached by the orators, as previously stated.

That Anderson & Sargent threaten to inforce the collec-
lection of the four notes, and have already commenced suits
in Grafton county for the two which fell due first.

That the property mortgaged to William M. Morrison
comprises all the attachable property of Samuel Morrison;
that it is wholly insufficient to pay the claims of Anderson
& Sargent and of the complainants; and that the claim of
Anderson & Sargent, if established, will absorb all or nearly
all of Samuel's property, leaving the orators unable to ob-
tain payment of their claims.

The bill prays that Anderson & Sargent may be decreed

to surrender up to be cancelled and destroyed the four promissory notes given to them by Samuel and William M. Morrison, and that Anderson & Sargent may be restrained by injunction from further prosecuting the actions at law in their favor upon the two notes. The bill also prays for general relief.

*Bingham* and *Quincy*, for the defendants.

Our general position is, that the bill states no such case as entitles the orators to the relief sought. The substance of the charge is, that the defendants, Anderson & Sargent, by fraud and misrepresentation, procured certain notes described in the bill, and they then seek to have the notes cancelled, by setting themselves up as creditors of Samuel Morrison. Now we desire the court to examine carefully the language and allegations of the bill; for we insist that it makes out no case for the plaintiffs upon which they can successfully rely. We say—

I. The orators have not made Joseph F. Morrison a party, though from the statements of the bill, he is clearly interested. All parties materially interested in a bill should be joined. Story's Eq. Pld. chap. 4, p. 74.

II. The bill purports to be a creditor's bill, and its purpose is to have certain embarrassments in the way of collecting their debts at law removed by equitable interference. If such be the character of the bill, they must first exhaust their legal remedies before they can apply to equity. *Dodge* v. *Griswold*, 8 N. H. Rep. 425; *Tappan* v. *Evans*, 11 N. H. Rep. 311; *Brinkerhoof* v. *Brown*, 4 Johns. Ch. Rep. 671; *Webster* v. *Clarke & a.*, 25 Maine Rep. 313; *Webster* v. *Withey*, 25 Maine Rep. 326; *Waterman* v. *Cochran & a.*, 12 Vt. Rep. 399; *Rice* v. *Barnard*, 20 Vt. Rep. 479; Cooper's Eq. Pld. 149; *Howard* v. *Sheldon*, 11 Paige's Rep. 558. The orators have not exhausted their remedy at law.

III. There is no equity in the bill. If there was anything in the matters set forth in the bill, the parties injured

have a plain and adequate remedy at law. In such a case equity never interferes. *Woodman* v. *Freeman*, 25 Maine Rep. 531 ; *Denney* v. *Gilmore*, 26 Maine Rep. 149; Story's Eq. Pl. 373 ; Cooper's Eq. Pl. 124.

IV. The plaintiffs might, perhaps, by leave of court, appear and defend suits on the notes in favor of Anderson & Sargent, by giving security to pay costs, and in such suits they might recover. They in fact have done so. *Buckman* v. *Buckman*, 4 N. H. Rep. 319; *Webster* v. *Harper*, 7 N. H. Rep. 596.

V. The ground of the bill, and the basis upon which the plaintiffs build their right to recover, is a fraud which they allege the defendants, Anderson & Sargent, aided by their clerk, Gilbert, perpetrated on one of the other defendants, Samuel Morrison ; but the plaintiffs do not even claim that the defendants, Morrison and Anderson & Sargent, either severally or collectively, intended or thought of defrauding them. They only claim that they suffer incidentally and collaterally, by reason of a contract which Samuel Morrison was induced, by the fraudulent representations of Anderson & Sargent, to enter into with them ; that on account of this contract they cannot collect their debts so well as they otherwise could ; and on this ground alone they ask a court of equity to interfere and cancel a contract to which they were in no wise parties, and which was not made with reference to them or their rights, and with which they have been in no way connected. They seem to forget the principle that a fraudulent contract can be avoided only at the option of the party defrauded, and that he alone can sustain an action therefor; either in law or in equity. *Ayers* v. *Hewitt*, 19 Maine Rep. 281; *Rowley* v. *Bigelow*, 12 Pick. Rep. 307 ; *Milton* v. *Strong*, 11 Vt. Rep. 101; *Fitzsimmons* v. *Joslin*, 21 Vt. Rep. 138, 140 ; *Lamb* v. *Stone*, 11 Pick. Rep. 526.

Our position is that a bill could not be sustained by Samuel Morrison to set aside these notes, and the plaintiffs can stand in no better situation than he.

VI. On the facts stated in the bill, this court has no ju-
risdiction so as to enable them to grant to the plaintiffs the
relief they ask. It is no concern of these plaintiffs how
many notes Anderson & Sargent hold against the Morri-
sons, or how they came by them.

*Rand* and *Bellows*, for the orators.

The ground on which we go, is, that Samuel Morrison
having drawn an order upon Stone & Page, for the delivery
of goods on his credit to Joseph F. Morrison, and Stone &
Page, having delivered a large amount of goods upon that
order, Anderson & Sargent, for the purpose of inducing
Samuel Morrison to assume the debt of Joseph F. Morrison,
falsely represented to Samuel that Anderson & Sargent and
Stone & Page were connected in business, and that they,
Anderson & Sargent, had received said order, had delivered
goods upon it to Joseph F. Morrison, and would immedi-
ately send the order to Samuel if he would assume or pay
the debt for the goods so delivered, and that relying upon
these representations Samuel Morrison did assume the debt;
whereas in truth there was no such connection between the
firms, the goods delivered by Anderson & Sargent were not
delivered upon said order, nor had they any power over it,
nor did they return it to said Samuel.

This is the substance of the plaintiffs' case ; and although
an important ground taken upon the other side is, that there
is no equity in the bill, yet we contend that the facts show a
most gross fraud perpetrated upon Samuel Morrison. If
parties can do as these did, then we can imagine no fraud
that a party cannot perpetrate with impunity.

We have no adequate remedy at law. A judgment at
law does not cancel the mortgage. And besides, that judg-
ment might be reversed on review or writ of error. But this
is a familiar head of equity. *Dodge* v. *Griswold*, 8 N. H.
Rep. 425; *Tappan* v. *Evans*, 11 N. H. Rep. 311. The
plaintiffs' title is upon the ground that they have acquired

a specific lien upon the property mortgaged, and therefore come within the doctrine laid down by Ch. J. *Parker* in the last case cited.

Since the cases of *Kittredge* v. *Warren* and *Kittredge* v. *Emerson*, it is considered as settled law in this State that an attachment is a lien, and that the creditor is entitled to the remedies necessary to make it effectual. And our courts have decided that for that purpose they will issue injunctions to protect that right. If so, it covers the whole ground, as the proceeding here is to obtain a decree of the court in the nature of an injunction to restrain the party from setting up this fraudulent claim against the rights acquired by the attachment.

At the time of the decision of *Dodge* v. *Griswold*, it had not been held that an attachment was a lien; and that accounts for the doctrine then held. But now there is no doubt that our attachment is a lien, and a court of chancery can aid us in perfecting that lien. We can by no proceedings at law remove the fraudulent title of William M. Morrison.

This is not a creditors' bill, technically so speaking, but we thought that out of abundant caution we had better take the course we did. But the case does not come within that class of cases which requires all remedies at law to be exhausted before a resort can be had to equity. In fact, this proceeding is to enable the plaintiffs to make effectual their remedies at law. The debt is admitted by Morrison, as to whom the bill is taken *pro confesso.*

Creditors, who are the victims of the same fraud, though having separate debts, yet having rights against a common fund, which is affected by such fraud, may join. Story's Eq. Pl. §§ 121, 122; *Joy* v. *Wirtz*, 1 Wash. C. C. Rep. 417; *Brinkerhoff* v. *Brown*, 6 John. Ch. Rep. 139.

As to not joining Joseph F. Morrison, we say his debt is not affected by the result, and we do not see how he has any interest in the matter. But he can be made a party

now, if the court think it necessary that he should be joined.

As to there being no combination alleged in the bill between the Morrisons and Anderson & Sargent; that is not necessary; the case does not go upon that ground. It is necessary that the Morrisons should be joined, but it is not material whether as defendants or plaintiffs.

EASTMAN, J. From an examination of the bill filed in this case, it appears that the principal controversy is betweeen the orators, as creditors of Samuel Morrison, on the one part, and Anderson & Sargent upon the other. The Morrisons, although made defendants in the bill, are passive in the matter.

The first question that arises is, whether the bill can be sustained by the complainants, they being creditors only, and having simply attached the property of Samuel Morrison, without having obtained any further lien upon it, or exhausted their remedy at law.

In *Dodge & a.* v. *Griswold & a.*, 8 N. H. Rep. 425, it was held that a creditor who has commenced a suit against his debtor, and caused real estate to be attached by virtue of his original writ, has a title to maintain a bill to set aside a fraudulent conveyance of the real estate as soon as the debtor has been defaulted in the suit against him; and *Richardson,* C. J., in delivering the opinion of the court, lays much stress upon the fact, that the defendant had become defaulted. He says, also, that if nothing further appeared in the bill than that the plaintiffs had caused the land to be attached, the bill could not be sustained.

But in *Tappan* v. *Evans & a.* 11 N. H. Rep. 311, the doctrine is laid down that where property is subject to execution, and a creditor seeks to have a fraudulent conveyance or obstruction to a levy or sale, removed, he may file a bill in equity as soon as he has obtained a specific lien upon the property, whether the lien be obtained by attachment, judgment, or the issuing of execution. If the property is

not subject to levy or sale, or if the creditor has obtained no lien, he must show his remedy at law exhausted by an actual return upon his execution, that no goods or estate can be found, before he can file a bill to reach the equitable property, or choses in action, of his debtor.

And such, says *Parker*, C. J., is the general doctrine deducible from the authorities.

In *Kittredge* v. *Warren*, 14 N. H. Rep. 509, the effect of an attachment upon property, upon mesne process, as creating a lien upon the property, was very fully and ably discussed, and the question settled that such an attachment is a lien upon the property, valid by the laws of this State. In the course of the opinion delivered in the case, the very learned chief justice remarked that he had never concurred in some of the views incidentally taken in *Dodge* v. *Griswold;* that he had never been able to discover how the default gave the plaintiffs any greater title to maintain their bill than they would have had without it. That the legal right to come into chancery to have the alleged fraudulent conveyance removed out of the way of a levy of the execution, depended upon the attachment, and that existed before the default as perfect as it did afterwards.

The doctrine of *Kittredge* v. *Warren* was reëxamined and affirmed in *Kittredge* v. *Emerson*, 15 N. H. Rep. 227, in the masterly opinion delivered in that case; and the effect of our attachment laws, as creating a lien upon property has, as is well known, been fully recognized by the supreme court of the United States.

Upon the authority of these cases, which appear to us to be well founded upon correct principles, there can be no doubt that the attachments made by the plaintiffs upon the property of Samuel Morrison, give them a sufficient lien upon the same to maintain their bill; their object being to remove from the property the obstructions that the defendants have caused to be placed upon it, so that it may be taken to satisfy the debts of the plaintiffs. In such a case,

there is no necessity for the complainants to exhaust their remedy at law before proceeding in equity.

Although it has been held in England and New York, and probably in other jurisdictions, that a bill cannot be filed to set aside fraudulent conveyances until the creditor has obtained a judgment, yet this doctrine is believed to be founded upon the fact, that where it prevails no attachment is made upon mesne process, as with us, and no lien obtained upon the property until judgment. The judgment operates as a lien, and as soon as that is obtained, the bill may be filed. It is the lien upon the property which gives the party the right to his bill in equity.

The attachment being a sufficient lien to entitle the complainants to proceed with their bill, there can be no doubt of the jurisdiction of this court, as a court of equity, to entertain the cause ; for this court has jurisdiction in equity, independent of any alleged necessity for discovery, in all cases of fraud, where complete and adequate relief cannot be had at law.    *Tappan* v. *Evans & a*. 11 N. H. Rep. 311 ; *Dodge* v. *Griswold*, 8 N. H. Rep. 425.    And in the former case it was held that no remedy is adequate and sufficient against a fraudulent conveyance, except one which gives a release or removes the fraudulent title.

Now the ground of the complainants is this : that the property attached by them is Samuel Morrison's, he being confessedly their debtor; that the same property has been mortgaged to William M. Morrison, to secure indirectly the payment of the fraudulent claims of Anderson & Sargent against Samuel Morrison, and that the complainants' remedy against these claims and this mortgage is inadequate at law.    And according to the views expressed and the authorities cited, the case comes within equitable principles, and the bill may be sustained, if the facts are sufficiently averred.

The allegations of the bill are, in brief, that the complainants have valid claims against Samuel Morrison to an

amount exceeding $1,500, which are founded upon a good consideration, the claims growing out of orders drawn by Samuel Morrison upon the complainants, in favor of Joseph F. Morrison.  That Anderson & Sargent, being aware of this fact, and having a large claim against Joseph F. Morrison, which he had contracted on his individual liability, concerted a scheme to induce Samuel Morrison, by fraud and misrepresentation, to charge himself with the amount of their claim against Joseph F. Morrison, he being irresponsible; that accordingly and for that purpose Anderson and one Gilbert, who was and still is the clerk and confidential agent of Anderson & Sargent, went to Plymouth, where Joseph F. Morrison resided, and, in furtherance of their fraudulent design, Gilbert procured Joseph F. to sign a paper, stating that he was the person who had purchased goods of Anderson & Sargent for Samuel Morrison, he falsely stating that the purpose of the paper was to make Joseph F. known to Anderson & Sargent, and that Joseph F. was not aware of its import and object.  That Anderson and Gilbert then went immediately to Samuel Morrison, and upon his stating that he had drawn orders on Stone & Page, but knew nothing of Anderson & Sargent, and had had no dealings with them, Gilbert falsely and fraudulently represented that Stone & Page and Anderson & Sargent were connected together in business, that the order which Samuel Morrison had drawn upon Stone & Page had come into the possession of Anderson & Sargent, and that the goods sold and delivered by them to Joseph F, were sold in the name and on the credit of Samuel.  All of which representations the bill charges to be entirely false.  That Gilbert, by threats of a prosecution, and of arresting and taking to Massachusetts Joseph F., to be tried for a state prison offence, induced Samuel to sign a paper, after he had refused to sign notes, containing a request that Anderson & Sargent should let Joseph F. have no more goods on his account.  That soon after obtaining this paper, Anderson

and Gilbert came to Samuel Morrison again, and by threats and in consequence of the misrepresentations already made, and of the additional statement of Anderson, that if Morrison did not find every thing just as he and Gilbert had represented, they would make it all right, Samuel Morrison was induced to sign the four notes, and give the same to Anderson & Sargent, and procure his son, William M. Morrison to sign, as surety with him, Samuel mortgaging all of his property to his son, (being the same attached by the complainants,) to secure him for signing the notes.

The bill charges distinctly that Samuel Morrison was induced to sign the notes to Anderson & Sargent by the false and fraudulent representations and promises of Anderson & Sargent, and Gilbert, as their agent, and that the notes were given wholly without consideration on the part of Samuel Morrison.

This is the substance of the bill, and the demurrer admits all these facts. It admits that a scheme was concerted at Boston to overreach, deceive and defraud Samuel Morrison; that that scheme was successfully carried out, and by the fraud thus perpetrated upon Samuel Morrison, the complainants, who are his creditors, will be defrauded of their just claims. The acts of Gilbert were the acts of Anderson & Sargent. What he did was by their direction and request, and they are bound by it. *Bank* v. *Gregg*, 14 N. H. Rep. 331.

It is said in argument that there is no equity in the bill, and that the complainants have a plain and adequate remedy at law. But we cannot so regard it. Admitting the statements in the bill to be true, the claim, which Anderson & Sargent have upon Samuel Morrison, and which stands in the way of the collection of the complainants' demands, by reason of the mortgages upon Morrison's property, placed there on account of that claim, was brought about by gross fraud, and is entirely without consideration; and should this be made to appear in a suit at law, and the complainants suc-

Stone *v.* Anderson.

ceed in collecting their debts out of the property, still there would remain upon the records, uncancelled, the mortgages to William M. Morrison, and the complainants' title to the property would lack that completeness which, in good conscience, they ought to have. A court of equity will interfere in such a case. It has jurisdiction in all cases of fraud, if the remedy at law is not perfect and complete, and where a fraudulent incumbrance upon property cannot be removed by process of law, equity will interfere. *Tappan* v. *Evans & a.* 11 N. H. Rep. 311; *Dodge* v. *Griswold,* 8 N. H. Rep. 425; *Bean* v. *Smith,* 2 Mason 252; *Mountford* v. *Taylor,* 6 Vesey 788; *Hadden* v. *Spader,* 20 Johns. 554; *McDurmutt* v. *Strong,* 4 Johns. Ch. Rep. 787.

The remedy, by obtaining from the common pleas leave to appear and defend the suits of Anderson & Sargent upon the notes, is far from being complete. The appearance in such cases is not a legal right, but rests in the sound discretion of the court where the actions are pending; and is usually where there is collusion between the parties to the suits in which the first attachments are made. Should the complainants obtain leave to appear, and should they defeat the actions of Anderson & Sargent, there would still remain upon the property, uncancelled, the mortgages to Morrison.

The position of the defendants, that there was no confederacy between Anderson & Sargent and the Morrisons, to defraud the complainants, and that the complainants cannot maintain a bill which Samuel Morrison could not, cannot be sustained. The allegation of confederacy in a bill is not essential, except where it is intended to charge fraud and combination specifically. Story's Eq. Pl. § 29; Coop. Eq. Pl. 14; 1 Daniel Ch. Prac. 426. The bill does not go upon the ground that there has been fraud and combination between the defendants to injure the orators, but that there has been fraud practised by Anderson & Sargent upon Morrison, by which the orators are as effectually injured as if there had been an actual combination against them. And

Stone *v.* Anderson.

according to the view which we take of the case, it is unnecessary to consider whether Samuel Morrison could maintain a bill against Anderson & Sargent or not. If the complainants can show that, by the fraud of Anderson & Sargent, the property of Morrison, which should be honestly appropriated to the satisfaction of the complainants' demands, is about to be sacrificed to the payment of fraudulent claims, and they thereby lose their debts, and that they have no adequate remedy at law to prevent it, they make out a case for the interference of chancery.

All this appears by the bill, and we think it should be answered.

The necessity of making Joseph F. Morrison a party to this proceeding is not perceived. He is not to be affected by the result one way or the other, and was no party to the fraud.

Whether the decree in favor of the complainants, in case they should ultimately prevail, would be precisely in accordance with their specific prayer, need not be investigated at this time. Under the general prayer for relief, the complainants may pray at the bar for such specific relief as the statements of the bill will warrant, provided it does not conflict with that specifically prayed for. 1 Danl. Ch. Pr. 434, 435, and notes; Story's Eq. Pl. § 41; Coop. Eq. Pl. 13, 14.

In *Bailey & a.* v. *Burton*, 8. Wend. 339, the rule was carried further, and it was there held that under the general prayer, the complainant is entitled to any relief consistent with the case made, though inconsistent with the specific relief prayed for; and that under the prayer for general relief, it was competent for a court of equity to set aside a mortgage as fraudulent, the facts warranting such conclusion, although the specific relief prayed for was permission to redeem.

But this question can be settled when it shall be necessary so to do. So far as at present appears, the bill is well enough drawn to answer the object of the complainants,

which is to remove the obstructions interposed by Anderson & Sargent to the collection of the complainants' demands.

*Demurrer overruled.*